UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| LAMAR MCVAY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | **Case No. 1:22-CV-00130-NCC** |
| v. | ) | |
| | ) | |
| GREGORY HANCOCK,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner's Amended Petition under 28 U.S.C. § 2254

for Writ of Habeas Corpus by a Person in State Custody (Doc. 27).  Respondent has filed a

Response (Doc. 30), and Petitioner has filed a Reply (Doc. 33).  The parties have consented to

the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)

(Doc. 8).  After reviewing the case, the Court has determined that Petitioner is not entitled to

relief.  As a result, the Court will **DENY** the Petition and **DISMISS** the case.

**I.  PROCEDURAL HISTORY**

On February 25, 2015, in the Circuit Court of Pemiscot County, Missouri, a jury found

Petitioner guilty of the sole charge of first-degree robbery (Doc. 13-1 at 448).  On April 7, 2015,

the Circuit Court sentenced Petitioner as a prior and persistent offender to a sentence of 30 years

in the Missouri Department of Corrections (Doc. 13-2 at 98-99).  Petitioner appealed the

judgment, raising four claims:

---

[1]  Petitioner is currently incarcerated at Southeast Correctional Center in Charleston, Missouri. *See Missouri Dept' Corr. Offender Search*, https://web.mo.gov/doc/offSearchWeb/ offenderInfoAction.do (last visited March 16, 2026).  Gregory Hancock is the Warden. Therefore, Gregory Hancock should be substituted as the proper party respondent.  *See* 28 U.S.C. § 2254, Rule 2(a).

(1) The trial court abused its discretion in overruling defense counsel's objections to State's Exhibits 8 and 9, video and still picture from the Arkansas robbery, along with testimony from the Arkansas convenience store clerk and the Blytheville police officer about the robbery, because this evidence violated appellant's rights to due process, a fair trial, and to be tried only for the offense charged, guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10, 17 and 18(a) of the Missouri Constitution, in that, despite the trial court's attempt to limit the testimony and evidence to an "incident" rather than calling it a "robbery," the evidence was clearly of another similar crime, but one which was not sufficiently unusual or distinctive to fall under the identity exception to the inadmissibility of evidence of other misconduct, prejudicing appellant, since such "bad acts" evidence would raise a legally spurious presumption of guilt in the minds of the jurors.

(2) The trial court erred in denying appellant's motion to suppress identification and in failing to exclude the in-court identification of appellant by Lisa Greathouse, because the identifications were tainted by an impermissibly suggestive procedure, which violated appellant's right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Missouri Constitution, in that a very substantial likelihood of irreparable misidentification existed, since in the lineup photos, appellant was the only person in an orange jumpsuit, the only person with a scar on his face, the only person in hair braids and the only person whose name did not begin with the letter "A." Furthermore, the officer asked Greathouse if she "could possibly identify the person that committed the robbery in the lineup" and sometime after the lineup, an officer told Greathouse that they "got the guy who robbed her," which would have confirmed any misidentification, causing her to continue her error at trial.

(3) The trial court abused its discretion in overruling defense counsel's objections to testimony from Officer Randy Trimm that he recognized appellant on the surveillance tapes, because the ruling denied appellant his due process right to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that there was no showing that Trimm had any expertise that would render him more qualified than the jurors who viewed the tape to make an identification. The testimony was irrelevant, prejudicial, and invaded the province of the jury.

(4) The trial court abused its discretion in overruling defense counsel's motion to dismiss because the state failed to disclose the surveillance video from the First Street Apartments in violation of appellant's rights to due process, a fair trial, to present a defense and to confront and cross-examine the witnesses against him guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution, in that the police looked at the surveillance video while investigating whether appellant's car was at the apartments, but failed to maintain it in order that other cars could be investigated.  Appellant was prejudiced because this potentially exculpatory material was not maintained, leading

2

to the conclusion that the police were only looking for evidence inculpating appellant rather than investigating the case as a whole.

(Doc. 13-3 at 13-18).  On October 31, 2016, the Missouri Court of Appeals for the Southern District affirmed the judgment (Doc. 13-5).  Petitioner filed a Motion for Rehearing or in the Alternative, for Transfer to the Supreme Court of Missouri on November 8, 2016 (Doc. 13-6 at 8).  The Court of Appeals overruled the Motion for Rehearing and Application for Transfer on November 15, 2016 (*id*.).  On November 18, 2016, Petitioner filed a Notice of Filing Appellant's Application to the Missouri Supreme Court (*id*.).  The Southern District Court of Appeals issued a Mandate affirming the conviction and judgment on May 3, 2017 (*id*.).

Petitioner filed a pro se motion for post-conviction relief on June 9, 2017 (*id*.).  On October 20, 2017, counsel filed an amended motion for post-conviction relief on Petitioner's behalf raising two claims:

(1) Trial counsel was ineffective for inducing Mr. McVay's unknowing, unintelligent, and involuntary waiver of his right to testify by telling Mr. McVay that he should not testify at his trial and leading Mr. McVay to believe that trial counsel was waiving his right to testify.

(2) Appellate counsel was ineffective for failing to raise the claim that the trial court erred in denying Mr. McVay's motion to suppress statements made to police.

(Doc. 13-7 at 4-9).  In lieu of an evidentiary hearing, the parties stipulated that the case would be submitted on the contents of the case file and depositions of Petitioner, his trial counsel, and his appellate counsel (Doc. 13-6 at 8-9).  On April 1, 2021, the motion court denied Petitioner's amended motion (*id*. at 13-20).  Petitioner appealed both claims (Doc. 13-8 at 20-21).  On February 14, 2022, the Missouri Court of Appeals for the Southern District affirmed the motion court's denial of the motion (Doc. 13-10).  The Missouri Court of Appeals' mandate issued on March 2, 2022.

3

On October 3, 2022, Petitioner filed his Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1).  On July 24, 2023, he filed his Amended Petition (Doc. 27).  In his Amended Petition, he raises all his claims on direct appeal and in his post-conviction appeal.

## II.  DISCUSSION

In the habeas setting, a federal court is bound by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, to exercise only "limited and deferential review" of underlying state court decisions.  *Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003).  Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* at 407-08.  Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record.  28 U.S.C. § 2254(e)(1); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).

**A.  Admission of State's Exhibits 8 and 9, video and still picture from the Arkansas robbery, and testimony from the Arkansas convenience store clerk and the Blytheville police officer about the robbery (Ground One)**

In Ground One, Petitioner asserts, as on direct appeal, that the trial court abused its discretion in overruling Petitioner's objections to a video and still picture from the Arkansas robbery (State's Exhibits 8 and 9), testimony from the Arkansas convenience store clerk, and testimony from the Blytheville police officer about the robbery (Doc. 27 at 7).  Petitioner asserts this evidence violated his rights under the Fifth, Sixth, and Fourteenth Amendments in that, despite the trial court's attempt to limit the testimony and evidence to an "incident" rather than calling it a "robbery," the evidence was clearly of another similar crime, but one which was not sufficiently unusual or distinctive to fall under the identity exception to the inadmissibility of evidence of other misconduct (*id.*).  Petitioner asserts the evidence prejudiced him since the "bad acts" evidence would raise a legally spurious presumption of guilt in the mind of the jurors (*id.*).  Respondent argues that the claim is not cognizable under the Court's limited jurisdiction because a state-law evidence claim cannot be the foundation of habeas relief (Doc. 30 at 2).  Alternatively, Respondent contends that this Court should defer to the Missouri Court of Appeals' decision denying Petitioner's claim (Doc. 30 at 2-4).  The Court agrees that Ground One should be denied.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Under 28 U.S.C. § 2254, this Court is only permitted "to correct violations of (1) the United States Constitution; (2) federal laws; or (3) treaties of the United States." *Nettles v. Stange*, No. 4:20-CV-00203-JAR, 2021 WL 2042270, at *8 (E.D. Mo. May 21, 2021).  "[A]dmissibility of evidence at a state trial is a matter of state law and ordinarily will not form the basis for federal habeas relief." *Clark v.*

*Groose*, 16 F.3d 960, 963 (8th Cir. 1994); *see also King v. Roper*, No. 4:04 CV 1672 CDP/MLM, 2005 WL 1518291, at \*15 (E.D. Mo. June 24, 2005) ("Because the admission or exclusion of evidence is primarily a question of state law, an evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition.").

"'A federal issue is raised only where trial errors infringe on a specific constitutional protection or are so prejudicial as to amount to a denial of due process.'" *Sittner v. Bowersox*, 969 F.3d 846, 849-850 (8th Cir. 2020) (quoting *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006)); *see also Williams v. Ramey*, No. 4:18 CV 643 SRW, 2020 WL 6117945, at \*8 (E.D. Mo. Oct. 16, 2020) ("A federal court will reverse a state court evidentiary ruling 'only if it infringes upon a specific constitutional right or is so grossly or conspicuously prejudicial that it fatally infected the trial and denied the defendant the fundamental fairness that is the essence of due process.'") (modified) (quoting *Maynard v. Lockhart*, 981 F.2d 981, 986 (8th Cir.1992)); *Parker v. Bowersox*, 94 F.3d 458, 460 (8th Cir. 1996) (same). Alleged improprieties must be shown by a state petitioner to be "'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'" *Sittner*, 969 F.3d at 850 (quoting *Rousan v. Roper*, 436 F.3d 951, 958-59 (8th Cir. 2006)). "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial-i.e., that absent the alleged impropriety the verdict probably would have been different." *Hamilton v. Nix*, 809 F.2d 463, 470 (8th Cir. 1987).

The Missouri Court of Appeals set out the following relevant facts:

> At trial, Defendant challenged his identity as the perpetrator of the robbery of the Flash Market in Steele, Missouri. In attempting to prove his identity as the robber, the State offered video, photographic, and testimonial evidence that 22 hours before the Flash Market was robbed and 16 miles away from the Flash Market, Defendant was in the Dodge Store in Blytheville, Arkansas, wearing the same shorts and shoes as the Flash Market robber was wearing, as described by

6

the Flash Market clerk, Lisa Greathouse, and as shown in the video of that robbery.

Shalonda Pope was the cashier at the Dodge Store and testified that an "incident" occurred on July 1, 2013.  During her testimony, Exhibits 8 and 9 were admitted over Defendant's objections.  Exhibit 8 contained surveillance video of the store, some portion of which was played for the jury, and Exhibit 9 was a still frame of a moment in time taken from a video on Exhibit 8 showing an individual entering the store.

Detective Vanessa Stewart of the Blytheville Police Department testified that she spoke with Defendant about the incident, and he told her that he was the individual in the video on Exhibit 8.  Following Detective Stewart's testimony, the trial court advised the jury that

> the testimony from Ms. Pope and Ms. Stewart is only to be considered by the jury for purposes of the identification of the defendant concerning the charge that he's on trial for today.  And that's the sole purpose it is to be used in the jury's deliberation, since I.D. is an issue in this case.

The State mentioned the Dodge Store video twice during closing argument.  First, the State noted that "you also heard about, it was later discovered that the defendant was spotted in Blytheville, Arkansas, at the Dodge Store. Same shoes, same shorts."  The State later argued:

> And not only do we have those witnesses, we have the same shoes, we have the same shorts as you see right here that he wore at Blytheville, which I remind you, was twenty hours, just twenty hours prior to the Steele robbery.  Wearing the same shoes, the same shorts, earlier in the day, same shoes, same shorts. Right here, same shoes, same shorts.

Defendant's point contends that the trial court abused its discretion in admitting Exhibits 8 and 9, the testimony of Pope, and the testimony of Detective Stewart because "the evidence was clearly of another similar crime," and "such 'bad acts' evidence would raise a legally spurious presumption of guilt in the minds of the jurors."

(Doc. 13-5 at 3-5).

The Missouri Court of Appeals denied the claim that the trial court abused its discretion

by admitting the evidence:

> The testimony of Pope and Detective Stewart does not, however, attribute any crime or bad act to Defendant.  Similarly, Exhibit 9 is a still photo that shows Defendant entering the Dodge Store.  It does not depict Defendant engaging in a crime or a bad act.  Exhibit 8 contains the only challenged evidence that shows Defendant engaging in a crime or bad act; however, Defendant does not contend that the portion of the Exhibit 8 video depicting the bad act was ever shown to the jury.

7

In order for evidence to be inadmissible as a prior bad act, it must in fact show a prior bad act.  *See e.g.*, *State v. Franklin*, 307 S.W.3d 205, 208 (Mo.App. 2010) (a victim's single reference to a "prior incident"—the nature of which was never revealed—did not constitute evidence of a crime); *State v. Rodgers*, 3 S.W.3d 818, 823 (Mo.App. 1999) (testimony concerning defendant's mug shot did not connect the defendant with a specific crime); *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc 1989) ("In the present case, the witness[es]' vague references cannot be characterized as clear evidence associating appellant with other crimes.").

Defendant's counsel on appeal argued at oral argument that "the evidence [of a prior crime] is ... the implication that a robbery occurred on the same date." We cannot credit this speculation when nothing in the record suggests that the jury understood the evidence to implicate the defendant in a robbery.  *State v. Depriest*, 822 S.W.2d 488, 492 (Mo.App. 1991), *overruled on other grounds by State v. Carson*, 941 S.W.2d 518 (Mo. banc 1997) (testimony and still photograph concerning the defendant being monitored on Sears surveillance video was not evidence of other crimes because nothing in the record "would cause a jury to infer that only people guilty of crimes are monitored by a Sears surveillance camera.").

Because the jury was not shown a prior bad act, Defendant's first point alleging that the jury was shown a prior bad act by implication is denied.

(Doc. 13-5 at 5-6).

The Missouri Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts.  Relying on state law, the court determined that the evidence was not inadmissible because it did not attribute bad acts to or show bad acts of the Petitioner.  This Court's role is not to second-guess the state court's evidentiary ruling, but to determine whether the rulings were "so conspicuously prejudicial or of such a magnitude as to fatally infect the trial."  *Parker*, 94 F.3d at 460.

Petitioner does not provide any argument or evidence nor does the record show how admission of this evidence violated his constitutional rights, or that admission of this evidence was so prejudicial that it fatally infected the trial.  Petitioner argues that the evidence "clearly constituted evidence of other crimes" (Doc. 33 at 5), but Petitioner has not shown how this is so

in light of the following: the testimony of Shalonda Pope and Det. Stewart does not attribute a bad act or crime to Petitioner; "Exhibit 9 is a still photo that shows Defendant entering the Dodge Store;" and "Exhibit 8 contains the only challenged evidence that shows Defendant engaging in a crime or bad act; however, Defendant does not contend that the portion of the Exhibit 8 video depicting the bad act was ever shown to the jury" (Doc. 13-5 at 5). Further, because Petitioner challenged his identity as the perpetrator, the photo, video, and testimony regarding the "incident" in Arkansas were used to prove Petitioner's identity, and the jury was instructed by the trial court to consider this evidence accordingly (*id*. at 4). The State, in its closing argument, permissibly referred to Petitioner having been "spotted" at a Dodge Store in Arkansas, and reiterated that the photo and video depicted an individual wearing the same shoes and same shorts as the individual identified in the charged robbery (*id*.). Petitioner speculates but fails to show the evidence implied an additional robbery or that the jury understood the evidence to implicate him in a robbery. He asserts that that during deliberations the jury asked to view the video again, but still, there is no indication that the video showed a bad act or that the jurors requested to view it for anything other than to determine identity as instructed by the judge.

Further, assuming *arguendo* that the evidence did present a prior bad act, Petitioner has not established its admission violated due process in light of significant other evidence of his guilt.[2] *See, e.g., Ivy v. Bowersox,* 122 F.3d 675, 676 (8th Cir. 1997) (deciding introduction of

---

[2] The Court notes that the Supreme Court has explicitly left open the question of whether the admission of evidence of other crimes solely to prove propensity violates due process. *See Estelle,* 502 U.S. at 75 n.5 ("[W]e express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). Indeed, many courts have held that the admission of prior crimes evidence does not warrant federal habeas relief. *See, e.g., Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) ("when a petitioner challenged the admission of his prior crimes, we denied relief

other-crimes evidence did not so infect trial so as to warrant federal habeas relief in light of other evidence of petitioner's guilt); *Robinson v. Leapley,* 26 F.3d 826, 832 (8th Cir.1994) (same); *Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006) (when viewed in light of all the evidence of this crime, the evidence of [a prior assault] was not so prejudicial as to amount to a denial of due process).

Petitioner has failed to show that the admission of this evidence was so conspicuously prejudicial or of such a magnitude as to fatally infect the trial and deprive the defendant of due process. *See Parker*, 94 F.3d at 460. Ground One is denied.

### B. Defendant's Identification by Lisa Greathouse (Ground Two)

In Ground Two, Petitioner asserts, as on direct appeal, that the trial court erred in denying Petitioner's motion to suppress identification and in failing to exclude the in-court identification by Lisa Greathouse ("Greathouse") because the identifications were tainted by an impermissibly suggestive procedure, which violated Petitioner's right to due process of law guaranteed by the Fourteenth Amendment (Doc. 27 at 7). Petitioner asserts that a very substantial likelihood of irreparable misidentification existed, since in the lineup photos, Petitioner was the only person in an orange jumpsuit, the only person with a scar on his face, the only person in hair braids, and the only person whose name did not begin with the letter "A" (*id.*). Petitioner argues that the officer asked Greathouse if she "could possibly identify the person that committed the robbery in

---

because 'no clearly established Supreme Court precedent ... holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence.'") (quoting *Bugh v. Mitchell*, 329 F.3d 496, 512–13 (6th Cir. 2003)); *Allison v. Superintendent Waymart SCI*, 703 F. App'x 91, 97–99 (3d Cir. 2017) (denying habeas claim because petitioner could not identify clearly established Supreme Court precedent that the admission of prior bad acts evidence constitutes a violation of due process); *Mejia v. Garcia*, 534 F.3d 1036, 1046-47 (9th Cir. 2008) (noting that Ninth Circuit precedent squarely foreclosed habeas claim that admission of impermissible propensity evidence violated petitioner's clearly established due process rights) (citing *Alberni v. McDaniel*, 458 F.3d 860 (9th Cir. 2006)).

the lineup" and sometime after the lineup, an officer told Greathouse that they "got the guy who

robbed her," which would have confirmed any misidentification, causing her to continue her

error at trial (*id.*).  Respondent argues that the state court's determination is a reasonable one that

should receive deference under 28 U.S.C. § 2254(d) and that there is support in the record for the

determination (Doc. 30 at 7).  The Court agrees that Ground Two should be denied.

As noted above, in a habeas proceeding, questions regarding admissibility of evidence are

matters of state law, and "'[a] federal issue is raised only where trial errors infringe on a specific

constitutional protection or are so prejudicial as to amount to a denial of due process.'"  *Sittner*,

969 F.3d at 849-850 (quoting *Bucklew*, 436 F.3d at 1018).  Petitioner must show alleged

improprieties were "'so egregious that they fatally infected the proceedings and rendered his

entire trial fundamentally unfair.'"  *Id.* at 850 (quoting *Rousan*, 436 F.3d at 958–59).

The Missouri Court of Appeals summarized the facts with respect to this claim, including

the evidence presented at both the suppression hearing and at trial as follows:

> Greathouse told police that, while working at the Flash Market, she was
> robbed by someone who often came into the store "two to three times per day."
> She described the robber as a "black male with a scar on his face" and described
> the robber's car as a "medium-size, blue car."  The next day, police asked
> Greathouse to participate in a photo lineup, and Greathouse identified Defendant.
> In the photos, Defendant is the only person pictured in what appears to be an
> orange jail uniform (although every photo depicts height lines behind the
> respective subject), is the only person pictured with a scar on his face, is the only
> person pictured in braids, is the only person pictured from Steele, Missouri, and
> Defendant's last name is conspicuously placed among the other names on the
> Photo Identification Form as the only one that does not begin with the letter "A."
> At the time of the lineup, Steele Police asked Ms. Greathouse if she could
> possibly identify the person who committed the robbery in the lineup.  Sometime
> after the photo lineup, police told Ms. Greathouse that they got the guy who
> robbed her.
> Greathouse did not see the names before she made the identification and
> did not pay any attention to them.  She also paid no attention to the "orange shirt"
> Defendant was shown wearing in the photo.  She understood the height indicators
> in each photo to mean that those persons in the photos had "all been in trouble and

11

had their pictures taken." She was "a hundred percent certain that [she] got the right guy" and identified Defendant again in the courtroom.

(Doc. 13-5 at 7).

The Missouri Court of Appeals determined that under the totality of the circumstances, the trial court's determination that the photo lineup was not impermissibly suggestive is supported by substantial evidence:

> The trial court found that "the procedures used by police were fair and not impermissibly suggestive and the witness had sufficient recollection independent of police procedures to provide a reliable identification" and overruled Defendant's motion.
>
>> [T]he crucial test for the admission of identification testimony is two-pronged: (1) was the pre-trial identification procedure impermissibly suggestive, and (2) if so, what impact did the suggestive procedure have upon the reliability of the identification made by the witness. Identification testimony will be excluded only when the procedure was so suggestive that it gave rise to a very substantial likelihood of irreparable misidentification.
>
> *State v. Hornbuckle*, 769 S.W.2d 89, 93 (Mo. banc 1989) (internal citations omitted). "While there are factors which may have operated to cloud identification, within the parameter of impermissible suggestiveness, the extent to which the perception and memory of a witness is influenced by outside sources is a question for the trier of fact." *Id.* at 94.
>
> Under the circumstances here, there was substantial evidence from which the trial court could conclude that the procedure used was not impermissibly suggestive. The individuals in the photo lineup shown to Greathouse are all of a similar complexion and stature. *See State v. Cosby*, 976 S.W.2d 464, 468–69 (Mo.App. 1998) ("[A] lineup is not impermissibly suggestive simply because the individuals in the lineup have different physical characteristics. A reasonable effort to find physically similar participants is all that is required. Differences in weight, age, height, hairstyle and other physical characteristics do not necessitate a finding of impermissible suggestiveness."). The officer's request to "identify the person that committed the robbery" is also not out of the ordinary. *Cosby*, 976 S.W.2d at 469 ("It is only natural that a victim of a crime asked to view a lineup would believe that it contains a suspect."). More importantly, Defendant was a regular customer of the Flash Market with whom Greathouse was familiar (even though she did not know his name), Greathouse was not influenced by the listed names or his clothing, and she remained confident in her identification through trial.

Under the totality of these circumstances, the trial court's determination that the photo lineup was not impermissibly suggestive is supported by substantial evidence.  Because the procedure used was not impermissibly suggestive, we do not consider what impact the procedure may have had upon the reliability of the identification made by Greathouse. Defendant's second point is denied.

(Doc. 13-5 at 7-9).

Respondent asserts the stipulation of facts submitted by the State and Petitioner for consideration at the suppression hearing further supports the courts' decisions (Doc. 30 at 7).

The stipulation states:

1.  Defendant is charged with Robbery in the First Degree and Armed Criminal Action, both alleged to have occurred on July 1, 2013 at the Flash Market in Steele, MO.
2.  At the direction of Steele Police officers, the alleged victim in this case, Ms. Lisa Greathouse, participated in a photo lineup identification the day following the robbery.
3.  Ms. Greathouse is a recent transplant to Missouri, and, at the time of the robbery, she had lived in Steele for no more than two months.
4.  At the time of the incident, Ms. Greathouse did not know the name of the person who allegedly robbed her, though she did tell police that she recognized the suspect, who Ms. Greathouse said often came in two to three times per day.
5.  Ms. Greathouse initially described the vehicle normally driven by the suspect as a "medium-size, blue car."  Police later showed Ms. Greathouse a photo of Mr. McVay's car, and she confirmed it as the suspect's vehicle.  Ms. Greathouse said, however, she doesn't know cars.
6.  Prior to the photo lineup, Ms. Greathouse had provided the following description of the suspect to Steele Police: black male with a scar on his face who came into the Flash Market often.
7.  This description provided four clues as to the suspect:
    A.  The suspect's race
    B.  The suspect's sex
    C.  The presence of a scar on the suspect's face
    D.  That the suspect likely lives and/or works in or around the city of Steele, MO
8.  During that lineup procedure, Ms. Greathouse identified Defendant's photo out of an array of six photos as the culprit in the July 1, 2013 robbery. The identification was not immediate.  (Deposition of Billy Joe Stanfield)
9.  This lineup procedure included the following:
    A.  Defendant is the only person pictured in what appears to be an orange jail uniform, although every photo depicted height lines behind the respective subject. (See included photo lineup)
    B.  Defendant is the only person pictured with a scar on his face.  (See included lineup excerpt of Lisa Greathouse deposition)

13

  C. Defendant is the only person pictured in hair braids.

  D. Defendant is the only person pictured from Steele, MO.

  E. Defendant's last name is conspicuously placed among the other names on the Photo Identification Form as the only one that does not begin with the letter "A." Ms. Greathouse viewed this form after identifying Defendant's photo in the lineup. She said she did not pay any attention to the names. (See included lineup and excerpt of Lisa Greathouse deposition)

  F. At the time of the lineup, Steele Police asked Ms. Greathouse if she "could identify--possibly identify the person that committed the robbery in the lineup."

  G. Some time after the photo lineup, police told Ms. Greathouse that they got the guy who robbed her.

  H. Ms. Greathouse later saw Mr. McVay in the Pemiscot County Jail during a parole hearing. Mr. McVay was confined and in jail scrubs at the time.

  I. Ms. Greathouse later saw Mr. McVay in jail scrubs at both the preliminary hearing and subsequent proceedings conducted in this matter.

(Doc. 13-17 at 3-5).

The Missouri Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. The Court of Appeals, relying on state law, concluded that the photo lineup procedure used was not impermissibly suggestive, and it is not this Court's role to reexamine that determination. *See Estelle*, 502 U.S. at 67-68. The Court must decide whether the rulings were "so conspicuously prejudicial or of such a magnitude as to fatally infect the trial." *Parker*, 94 F.3d at 460.

Petitioner has not shown that admission of Greathouse's out-of-court and in-court identifications infringed "on a specific constitutional protection or [was] so prejudicial as to amount to a denial of due process." *Sittner*, 969 F.3d at 849-50. Greathouse testified as follows: on the night of the robbery, a "regular customer" came to the door, she remembered him wearing dark-colored clothing, she could see the man's face and got a good look at it, she recognized the robber because he came in to the store "[p]robably everyday" and had come in earlier during her shift, she had seen him around 3:00 or 3:30 that afternoon, she told police she recognized the

14

robber and that he had a scar on his face, and she told police if he came into the store again she could tell right away who it was (Doc. 13-1 at 206-209). She testified that she was one-hundred percent certain she got the right guy when she made an identification at the photo lineup, that she did not see the page containing the names until after she made the identification, she was not affected by the fact that Petitioner's name was the only name that did not begin with the letter "A," that she did not pay attention to the orange shirt because she was paying attention to faces, and that all the pictures had height indicators in the background, and that there was no doubt she picked the right person (*id*. at 211, 247, 250-253). She also identified Petitioner in the courtroom at trial (*id.* at 212).

Steele Police Chief Billy Joe Stanfield testified that he did not show the second page of the lineup containing the names until after she made her identification by viewing the pictures on the first page (*id*. at 270). Although Petitioner argues the identification was unreliable because the victim did not include the perpetrator's facial scar in the 911 call, the victim mentioned it to the police upon their arrival at the Flash Market and before Petitioner's arrest (*id*. at 209, 223-225, 265, 278).

The Missouri Court of Appeals determined there was no error at all, explaining that the photos included individuals of similar stature and complexion, the officer's request to identify the individual who committed the robbery was not extraordinary, and that clothing and listed names did not influence Greathouse, especially given her familiarity with Petitioner as a regular customer. Petitioner has not produced evidence to the contrary, nor has he shown an error that deprived him of fundamental fairness. The Court's determination was reasonable, and Petitioner has failed to show that the admission of this evidence was so conspicuously prejudicial or of

15

such a magnitude as to fatally infect the trial and deprive the defendant of due process.  *See Parker*, 94 F.3d at 460.  Ground Two is denied.

### C.  Officer Trimm's Identification of Defendant in the Flash Market Video During His Investigation of the Robbery (Ground Three)

In Ground Three, Petitioner asserts, as in his direct appeal, that the trial court abused its discretion in overruling Petitioner's objections to testimony from Officer Randy Trimm ("Officer Trimm") that he recognized Petitioner on the surveillance tapes (Doc. 27 at 7).  Petitioner asserts the ruling denied Petitioner his due process rights under the Sixth and Fourteenth Amendments because there was no showing that Officer Trimm had any expertise that would render him more qualified than the jurors who viewed the video to make an identification (*id*.).  Petitioner further asserts the testimony was irrelevant, prejudicial, and invaded the province of the jury (*id*. at 8). Respondent argues that the claim is not cognizable under the Court's limited jurisdiction because a state law evidence claim cannot be the foundation of habeas relief (Doc. 30 at 12-13). Alternatively, Respondent argues the claim is meritless because the determination by the trial court and court of appeals that the testimony was admissible because it explained later behavior by the police was reasonable and should receive deference under § 2254(d) (*id*. at 13).  The Court agrees that Ground Three should be denied.

Since this too "is a question regarding the admissibility of evidence, it is analyzed 'only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.'"  *Frairson v. Morriss*, No. 4:22-CV-00936-ACL, 2025 WL 2661778, at *5 (E.D. Mo. Sept. 12, 2025) (quoting *Rousan*, 436 F.3d at 958) (modified).  Petitioner must demonstrate the error "'deprived [him] of fundamental fairness'" in order to establish denial of due process.  *Id.* (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th. Cir. 1993) (modified)).

16

The Missouri Court of Appeals summarized the facts with respect to this claim as follows:

> Officer John Randall Trimm, a captain and assistant police chief of the Steele Police Department, testified that, as part of the investigation of the Flash Market robbery, he reviewed surveillance footage from the store and recognized Defendant. Defendant objected that Officer Trimm's testimony was improper lay witness testimony. The trial court overruled that objection and Officer Trimm's testimony continued:
>
> > [Prosecutor]. I'm gonna ask you that again. Can you recognize the suspect in that video?
> >
> > [Officer Trimm]. Yes, sir I can.
> >
> > [Prosecutor]. As whom?
> >
> > [Officer Trimm]. Lamar McVay.
> >
> > [Prosecutor]. As who?
> >
> > [Officer Trimm]. The defendant.
> >
> > [Prosecutor]. Now, did you know where Mr. McVay lived?
> >
> > [Officer Trimm]. I was familiar with where Mr. McVay's father lived and I was familiar with the fact that he as [sic] staying.
> >
> > [Prosecutor]. Now, during the course of your investigation, did you in fact go to his father's house where he in fact was staying?
> >
> > [Officer Trimm]. That's correct.
> >
> > [Prosecutor]. Walk me through that?
> >
> > [Officer Trimm]. We would have went to apartment number 22, North First Street Apartments. We talked to the father, his name is Terry Hollywood. Mr. Hollywood gave us consent to search the home. He signed a consent to search form. He escorted, first, we did a quick through of the apartment to ensure that Mr., Mr. McVay wasn't in the house, and, Terry Hollywood took us back to the room that Mr. McVay lived in, and, just inside the door to the right was a pair of shoes. They would have been a pair of shoes, that in my opinion matched the description of the shoes in the video.

17

(Doc. 13-5 at 9-10).

The Missouri Court of Appeals determined Officer Trimm's testimony was not offered as opinion testimony but to explain his subsequent conduct in the investigation, and that the trial court did not err in overruling the objection:

> In *State v. Cummings*, a detective testified that he was aware of a potential suspect to a crime so he obtained a photo of that suspect to show to the witness who identified the defendant in the photograph and this lead to an arrest warrant being issued for the defendant. 400 S.W.3d 495, 502-03 (Mo.App. 2013). The officer identified the photograph, which had previously been admitted into evidence as "the photograph that [he] obtained that [he] believed was of Robert Cummings[.]" *Id*. at 503; 508. The defendant argued on appeal that the testimony was inadmissible because it was based on the officer's opinion and the jury was just as capable as the officer to evaluate whether or not the defendant was pictured in the photograph. *Id*. at 507. This court concluded that the officer's testimony "was not offered as opinion testimony or to prove the truth of the matter asserted—that the individual in the photograph was [the defendant]. Rather, the testimony was elicited to explain [the officer's] subsequent conduct[]" in obtaining an arrest warrant. Id. at 507. Therefore, this court held that because "'[i]t is well established that . . . testimony is admissible to explain the officers' conduct, supplying relevant background and continuity to the action[,]'" the trial court did not abuse its discretion in admitting the officer's testimony. *Id*. at 507-08 (quoting *State v. Brooks*, 618 S.W.2d 22, 25 (Mo. banc 1981)).
>
> Similarly, when viewed in context, Officer Trimm's identification of Defendant was not offered as opinion testimony that Defendant was in fact depicted in the video but rather was offered as Officer Trimm's personal observation during the course of his investigation that informed, directed, and dictated his subsequent conduct in the investigation. Without Officer Trimm's testimony that he recognized Defendant on the video, the jury might have been left speculating as to why Officer Trimm investigated the residence where the shoes were found.
>
> Because Officer Trimm's testimony was not offered as opinion testimony, but rather to explain his subsequent conduct in the investigation, the trial court did not err in overruling Defendant's objection. Defendant's third point is denied.

(Doc. 13-5 at 10-11).

The Missouri Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts. Relying on state law, the court determined there was no error at all because the

18

testimony was utilized to explain subsequent conduct and may have prevented juror speculation (Doc. 13-5 at 11). Petitioner merely argues that state did not provide this reason when it overruled Petitioner's objection to the testimony (Doc. 33 at 12). Petitioner has failed to demonstrate that any error was made at all, let alone one that deprived Petitioner of fundamental fairness. *See Frairson*, 2025 WL 2661778, at *6. Further, considering other significant identification evidence against him, Officer Trimm's identification testimony was merely cumulative, and not outcome-determinative. *See Washington v. Norman*, No. 4:11-CV-777 CAS, 2014 WL 4230901, at *8 (E.D. Mo. Aug. 26, 2014) (finding evidentiary claim not cognizable pursuant to federal habeas review where a witness's "identification of Petitioner and Petitioner's admissions provided sufficient evidence to establish that, absent the admission of the allegedly objectionable testimony, the jury would have found Petitioner guilty . . . it cannot be said that the admission of the testimony infringed upon a specific constitutional protection or that it was so prejudicial that it amounted to a denial of due process."). Petitioner has failed to show that the admission of Officer Trimm's testimony was so conspicuously prejudicial or of such a magnitude as to fatally infect the trial and deprive the defendant of due process. *See Parker*, 94 F.3d at 460. Ground Three is denied.

### D.  First Street Apartment Video (Ground Four)

In Ground Four, Petitioner asserts, as in his direct appeal, that the trial court abused its discretion in overruling Petitioner's motion to dismiss because the State failed to disclose the surveillance video from the First Street Apartments (Doc. 27 at 8). Petitioner asserts the ruling violated Petitioner's rights to due process, a fair trial, to present a defense, and to confront and cross-examine the witnesses against him as guaranteed by the Sixth and Fourteenth Amendments (*id*.). Petitioner argues the police viewed the surveillance video while investigating whether his

car was at the apartments but failed to maintain the video so that other cars could be investigated and Petitioner was thereby prejudiced because this potentially exculpatory video was not maintained (*id*.)  Petitioner also asserts the failure to maintain the video shows the police were only looking for evidence inculpating Petitioner rather than investigating the case as a whole (*id*.).  Respondent argues the state court's decision was reasonable and should receive deference under § 2254(d), and that there is support in the record for the determination that the video was not material (Doc. 30 at 14, 25).  The Court agrees that Ground Four should be denied.

"To establish a *Brady* violation, the movant bears the burden of showing that (1) the government suppressed evidence, either willfully or inadvertently; (2) the evidence was favorable to him, either because it was exculpatory or impeaching; and (3) it was material to the outcome at trial." *Allen v. Bowersox*, No. 4:16-CV-00920-JAR, 2019 WL 4418669, at *7 (E.D. Mo. Sept. 16, 2019) (citing *Masten v. United States*, 752 F.3d 1142, 1146 (8th Cir. 2014)).  Even if material is suppressed, "[t]o constitute a *Brady* violation, . . . , there must be 'a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Liggins v. Burger*, 422 F.3d 642, 653 (8th Cir. 2005) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).

The Missouri Court of Appeals summarized the facts with respect to this claim as follows:

> Defendant filed a motion to dismiss, alleging a *Brady* violation concerning video footage of an apartment complex, and his motion was denied.  We review the denial of his motion for an abuse of discretion. *State v. Rodgers*, 396 S.W.3d 398, 400 (Mo.App. 2013).
>
> The officer who viewed the footage of the apartment complex, Steele Police Department's Chief of Police Billy Joe Stanfield, testified that the footage was "grainy," taken at night, and "you could basically just see headlights, and, you know, an image. You couldn't make out the vehicles going in and out." The time stamp on the video was also incorrect, and Chief Stanfield was not sure that he would ever have been able to determine an accurate time reading. Because of

20

this, Chief Stanfield did not "obtain" the video. According to Chief Stanfield, the video would not have been beneficial to Defendant, or anyone for that matter, to show that Defendant's vehicle did or did not arrive at the apartment at a certain time.

(Doc. 13-5 at 12).

The Missouri Court of Appeals determined that Petitioner did not show the video is material or exculpatory, and the trial court did not abuse its discretion in denying the motion:

> "[D]ue process is violated when the prosecutor suppresses evidence that is favorable to the defendant and material to either guilt or punishment.  Evidence is material only when there is a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to the defense." *State v. Salter*, 250 S.W.3d 705, 714 (Mo. banc 2008).
> Defendant has not shown that the video is material.  "For evidence to qualify as 'materially exculpatory,' 'the evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *State v. Cox*, 328 S.W.3d 358, 362 (Mo.App. 2010) (quoting *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)).  Defendant produced no credible evidence supporting his position that the video tape was apparently exculpatory before it was destroyed.  The only evidence in this case is that the video would not have been material to guilt or punishment.  The trial court, therefore, did not abuse its discretion in denying Defendant's motion.  Defendant's fourth point is denied.

(Doc. 13-5 at 12-13).

The Missouri Court of Appeals' decision was not contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts.  Not only was the quality of the video at issue apparently poor and virtually useless for various reasons, but also, the officers who reviewed the surveillance tapes did not identify Petitioner or his car.  Petitioner does not explain how grainy footage from the apartment complex where he lived with unreliable timestamping could have been used in any meaningful way to exculpate him.  Although he asserts that other individuals or cars on the video could have been investigated for the robbery, this is unlikely considering the quality of the footage, as well as the

21

fact that an apartment complex, and not the scene of the robbery, was surveilled in the video. The mere possibility that someone or something yet to be identified could have been used to impeach officer testimony or establish an alibi is not sufficient to show that without suppression of the video the result of the proceeding would have been different. This is especially true given the other evidence, including eyewitness identification, against Petitioner. Petitioner has failed to show how the surveillance video was favorable, exculpatory, or material, or that there was a reasonable probability that the verdict would have been different had the State produced it. Ground Four is denied.

### E.  Ineffective Assistance of Trial Counsel (Ground Five)

In Ground Five, Petitioner asserts, as in his post-conviction appeal, that trial counsel was ineffective for telling Petitioner that he should not testify at his trial and leading Petitioner to believe that trial counsel was waiving his right to testify (Doc. 27 at 8). Petitioner asserts counsel's ineffective assistance violated his rights guaranteed by the Sixth and Fourteenth Amendments (*id*.). Respondent argues the court reasonably applied *Strickland v. Washington* when it determined counsel gave reasonable advice to Petitioner, who then decided not to testify, and the court's decision should receive deference under § 2254(d) (Doc. 30 at 17, 20). Respondent further argues that there is support in the record for the determination (*id*. at 20). The Court agrees that the Missouri Court of Appeals' decision should be upheld.

The Missouri Court of Appeals set forth the following relevant facts:

> McVay did not testify at trial. The trial court did not question McVay about his right to testify. At sentencing, McVay declined to answer any questions as to the assistance he received from trial counsel.
> McVay's trial counsel, David Wiegert (Wiegert), testified in his deposition that he and McVay spoke, both before and during trial, about whether McVay should testify. They came to the decision that he should not testify. McVay had two prior robbery convictions on his record, and McVay was aware that the jury would hear about those convictions if he testified. According to Wiegert, McVay

22

"wanted to rely on the evidence as it had been presented at the trial, and he decided that he did not want to testify."

Wiegert advised McVay on multiple occasions, prior to and during trial, that it was McVay's decision whether or not to testify. According to Wiegert, McVay never expressed a desire to testify. Wiegert recalled that, after the State rested its case, he advised McVay not to testify. Wiegert gave that advice because the jury would have heard about McVay's prior convictions for robbery, which would have been "damning in a case like this."

McVay, on the other hand, testified that he told Wiegert that he wanted to testify on several occasions, but counsel would not allow him to testify. According to McVay, he did not know at the time that it was his choice whether or not to testify, and learned that it was his choice only after he was delivered to the Department of Corrections.

The motion court decided McVay's claim that trial counsel induced him not to testify was "without merit." The court disbelieved McVay's testimony on the inducement issue and found that trial counsel advised McVay "that it was not in his best interest to testify due to his prior robbery convictions being exposed to the jury at trial[.]" The court concluded that this was sound trial strategy. The court reasoned that, "[n]ot only could it be against [McVay's] best interest if a jury learned about his prior felony convictions, but the fact that his prior convictions are the same crime he was being accused of at jury trial makes it that much more detrimental and unfavorable to [McVay]." The court went on to make the factual finding that McVay "ultimately was told it was his decision" whether or not to testify and he made that decision.

(Doc. 13-10 at 5-6).

To succeed on a claim of ineffective assistance of counsel, Petitioner must show that 1) counsel failed to exercise the level of skill and diligence that a reasonably competent attorney would exercise in a similar situation, and 2) Petitioner was prejudiced by counsel's failure. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. To prove prejudice, Petitioner must show there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694. The AEDPA provides "doubly" deferential review of ineffective assistance claims decided in state court. *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by Strickland and § 2254(d) are both 'highly deferential,' and when the two apply in

23

tandem, review is 'doubly' so.") (citation modified).

The Court of Appeals held that Petitioner did not meet his burden to prove his ineffective assistance claim, and that advice not to testify is not ineffective assistance if it is considered trial strategy:

> As a factual matter, McVay failed in his burden to prove this claim. *See* Rule 29.15(i); *McLaughlin*, 378 S.W.3d at 337. McVay relies on his testimony that: (1) he wanted to testify; (2) he did not know it was his decision whether or not to testify; and (3) trial counsel made the decision that he not testify. The motion court did not believe McVay's testimony, and the court "was under no obligation to do so." *Steger v. State*, 467 S.W.3d 887, 892 (Mo. App. 2015). Determinations concerning credibility are exclusively for the motion court, and it is free to believe or disbelieve any evidence, whether contradicted or undisputed. *Durst v. State*, 584 S.W.3d 817, 821 (Mo. App. 2019). Such deference "has been applied in situations where, like here, testimony has been provided by way of deposition." *Id*.
>
> In contrast, the motion court found credible Wiegert's testimony that: (1) he informed McVay that it was McVay's decision whether or not to testify; (2) he advised McVay against testifying because the jury would learn of his prior robbery convictions; and (3) McVay himself made the decision not to testify. This evidence supports the court's findings that: (1) McVay was told it was his decision whether or not to testify; and (2) he made the decision himself not to testify. *See Adkison*, 517 S.W.3d at 651 (only defendant may waive the right to testify, and waiver must be knowing and voluntary).
>
> Further, "trial counsel's advice not to testify is not deemed ineffective assistance of counsel if it might be considered trial strategy." *Hurst v. State*, 301 S.W.3d 112, 118 (Mo. App. 2010). The motion court so concluded here, and that decision is supported by the evidence. *See id*. (reasonable trial strategy in statutory rape and statutory sodomy case where trial counsel advised it was not prudent to put movant on the stand with his prior convictions for child molestation); see also *Copher v. State*, 570 S.W.3d 178, 184 (Mo. App. 2019) (reasonable trial strategy to advise movant that if he took the stand, and was as thoroughly impeached and discredited as trial counsel reasonably feared, "jurors could have just as easily found [his] testimony to be incredible, thus solidifying their conclusion as to his guilt"); *Mason v. State*, 552 S.W.3d 191, 196-97 (Mo. App. 2018) (trial counsel's "advice that it would not be a good idea for [the movant] to testify given his prior convictions was a reasonable choice of trial strategy").
>
> For all of these reasons, the motion court did not clearly err in rejecting McVay's claim that he received ineffective assistance of trial counsel concerning McVay's right to testify. Point 1 is denied.

(Doc. 13-10 at 6-7).

24

This Court agrees. Petitioner's claim that he did not waive his right to testify was fully explored via deposition testimony in the post-conviction proceedings. Both trial counsel and Petitioner provided testimony, and the motion court decided trial counsel's testimony was credible while Petitioner's was not. According to trial counsel's testimony, Petitioner was advised that it was his choice whether or not to testify and Petitioner, himself, made the decision not to testify. "We defer to the motion court's assessment of credibility." *King v. Roper*, 2005 WL 1518291, at *9; *Winfield v. Roper*, 460 F.3d 1026, 1035 (8th Cir. 2006) ("Issues of credibility are left to the discretion of the state courts."); *Pittman v. Black*, 764 F.2d 545, 546 (8th Cir.1985) ("The federal court's role is simply to ascertain whether the state court's findings of fact have fair support in the record.").

Further, relying on state law, the Court of Appeals reasonably determined counsel's advice not to testify was reasonable trial strategy in light of Petitioner's prior convictions, and not ineffective assistance. It is not the role of this Court to second-guess the state court's determination about a question of Missouri law. *See Arnold v. Dormire,* 675 F.3d 1082, 1086 (8th Cir. 2012) ("We do not second-guess the decision of a Missouri state court on Missouri law."). Moreover, the Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of federal law:

> Where a state court's findings of the attorney's advice regarding the right to testify and of the acceptance of counsel's advice are clearly supported by the record, a federal habeas court should "not second guess them." *Frey v. Schuetzle*, 151 F.3d 893, 898 (8th Cir. 1998) (pre-AEDPA federal habeas proceeding). Eighth Circuit case law supports a conclusion that an attorney's advice that a defendant should not testify due to prior convictions is not ineffective assistance of counsel. *Johnson v. Lockhart*, 921 F.2d 796, 800 (8th Cir. 1990) (due to an attorney's discretion to advise a client whether he should testify on his behalf, attorney's advice not to testify due, in part, to prior convictions may "at worst be called bad trial strategy, not constitutionally deficient legal performance"); *Drake v. Wyrick*, 640 F.2d 912, 915 (8th Cir. 1981) (trial attorney's advice that the defendant should not testify due, in part, to prior convictions was a matter of trial

strategy and not a ground for finding ineffective assistance).

*Floyd v. Frakes*, No. 8:13CV195, 2019 WL 4417587, at *23 (D. Neb. Sept. 16, 2019).  Trial counsel here advised against testifying because Petitioner was charged with robbery and had prior robbery convictions that would be revealed to the jury if he testified.

The Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of *Strickland v. Washington*, nor was it based on an unreasonable determination of the facts.  Ground Five is denied.

### F.  Ineffective Assistance of Appellate Counsel (Ground Six)

In Ground Six, Petitioner asserts, as in his post-conviction appeal, that appellate counsel was ineffective for failing to raise the claim that the trial court erred in denying Petitioner's motion to suppress statements made to Officer Vanessa Stewart ("Stewart") (Doc. 27 at 8). Petitioner asserts appellate counsel's ineffective assistance violated his rights to effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments (*id.*).  Respondent argues the appellate court found this claim was meritless as a matter of fact and as a matter of law, and the determination is reasonable and should receive deference under § 2254(d) (Doc. 30 at 20, 23).  Respondent also argues there is support in the record for the determination (*id.* at 24). The Court agrees with Respondent.

The Missouri Court of Appeals set forth the following relevant facts:

> As mentioned previously, the robbery charged in the underlying case occurred in Pemiscot County, Missouri. At trial, the court admitted a video offered by the State showing McVay's appearance at a convenience store in Blytheville, Arkansas. This video was recorded several hours before the Missouri robbery that led to charges against McVay in the underlying case. Because identification of McVay as the robber was at issue, the Arkansas video was offered to show that the man depicted in the Arkansas store was wearing the same or similar clothing to that worn by the man depicted in the surveillance video from the Missouri store, and to the clothing that was seized from McVay after he was arrested.

26

The State also wanted to present testimony about the Arkansas video from Blytheville Police Detective Vanessa Stewart (Stewart). McVay filed a motion to suppress Stewart's statements. Stewart testified at a suppression hearing. According to Stewart, her investigation of a robbery at the Arkansas store led her to identify McVay as a suspect. Stewart interviewed McVay at the Pemiscot County Jail about his appearance in the Arkansas video. Stewart gave McVay *Miranda* warnings, and McVay agreed to speak to her. Significantly, McVay admitted to Stewart that he was the man depicted in the Arkansas video. He told Stewart that, when he was in the Arkansas store, he pulled a gun out to adjust his pants and laid it on the counter. He said the clerk panicked and started giving him money, which he took as a gift. McVay acknowledged that he never requested an attorney when he talked to Stewart, and that he never informed her that he had an attorney. McVay also admitted that he never told her that he wanted to remain silent.

After the interview, Stewart's only interaction with Missouri law enforcement was to thank them. Stewart did not talk to law enforcement about the Missouri case. Similarly, she did not share any information about her case. Under Arkansas law, McVay would not be charged until he was taken into physical custody.

McVay's motion sought to suppress Stewart's testimony about McVay's statements made to her. McVay argued, inter alia, that law enforcement was aware that McVay was represented by counsel when Stewart talked to him, and she talked to him anyway.

The trial court overruled the motion to suppress. The court found that: (1) McVay was being questioned about an unrelated offense; (2) McVay waived his rights per *Miranda*; and (3) McVay's responses were freely and voluntarily given. At trial, Stewart's testimony was limited to the Arkansas video and the identification issue only. Stewart testified, over McVay's objection, that McVay said he was the man in the Arkansas video. In McVay's motion for new trial, he did include a claim of trial court error in admitting Stewart's testimony about McVay's statements because he was represented by counsel at the time of questioning.

McVay's appellate counsel, Ellen Flottman (Flottman), did not raise this particular claim of error on direct appeal. Flottman did, however, raise the claim that the trial court abused its discretion in overruling the motion to suppress Stewart's testimony for another reason. Flottman argued such evidence was inadmissible because it "was clearly of another similar crime" and such bad acts "would raise a legally spurious presumption of guilt in the minds of the jurors." Flottman considered this a "main issue" and participated in an oral argument before this Court. We denied the claim, however, because "the jury was not shown a prior bad act[.]" *McVay*, 518 S.W.3d at 222. Flottman also raised three other points on direct appeal.

In Flottman's deposition for the post-conviction hearing, she testified that she raised every issue that she thought had merit. She had 30 years' experience handling appeals and had written over 1,000 briefs. Her practice in determining what claims to raise is to review the transcript and legal file documents to see

27

what issues had been preserved for appeal, as well as to look for plain-error issues. In this case, Flottman reviewed the motion to suppress, the transcript of the suppression hearing, the trial transcript, and the motion for new trial. Flottman did not raise the represented-by-counsel aspect of the motion to suppress because it lacked merit.

In denying this claim, the motion court determined, *inter alia*, that McVay failed to prove appellate counsel's failure to raise the represented-by-counsel aspect of the motion to suppress was so obvious that a competent lawyer would have asserted it. The court credited Flottman's testimony that she raises every issue she believes has merit, noting that Flottman is "an attorney with thirty (30) years of experience drafting post-conviction relief documents who has drafted over 1,000 appeals[.]" The court also found "[n]o evidence exists in the record to establish that the trial court's ruling on [McVay's] motion to suppress was erroneous. This lack of evidence precluded appellate counsel from raising this issue on appeal as she focused on the issues she believed had merit." The motion court further found that McVay failed to establish prejudice.

(Doc. 13-10 at 8-11).

The Court of Appeals determined that appellate counsel *did* argue on appeal that the trial court erred in denying the motion to suppress statements he made to Stewart, that the motion court credited appellate counsel's testimony that she only raised issues she believed had merit, and that this particular argument would not have been meritorious:

McVay's second point contends the motion court clearly erred in denying this claim because he "received ineffective assistance of appellate counsel to his prejudice" because appellate counsel failed "to raise the claim that the trial court erred in denying [McVay's] motion to suppress statements made to Officer Vanessa Stewart." We disagree.

Contrary to McVay's point, Flottman did argue on appeal that the trial court erred in denying McVay's motion to suppress the statements he made to Stewart. Flottman challenged this ruling by arguing that the video and related statements improperly referenced prior criminal acts by McVay. In her judgment, this argument had potential merit. It is well settled that appellate counsel has "no duty to raise every possible issue asserted in the motion for new trial on appeal, and no duty to present non-frivolous issues where appellate counsel strategically decides to winnow out arguments in favor of other arguments." *Storey v. State*, 175 S.W.3d 116, 148 (Mo. banc 2005) (brackets and citation omitted); *Baumruk v. State*, 364 S.W.3d 518, 539 (Mo. banc 2012). Further, the motion court credited Flottman's testimony that, given her extensive experience, she raised only those issues she believed had merit and did not believe the represented-by-counsel argument had merit. We defer to the motion court on matters of credibility. *See Shockley*, 579 S.W.3d at 892.

28

In deciding that McVay failed to prove prejudice, the motion court noted that the right to counsel under the Sixth Amendment "is offense specific and only attaches when charges are filed." *See McNeil v. Wisconsin*, 501 U.S. 171 (1991). The court then found:

> The Missouri and Arkansas robberies are clearly two different offenses and were not even part of the same occurrence. Because of this, there was no Sixth Amendment violation even though [McVay] was represented by an attorney in his Missouri case. Since [McVay] had not been charged in Arkansas and had no attorney for that case, there is no Six[th] Amendment violation on that end either. Even if [McVay's] Sixth Amendment rights attached to the robbery in Arkansas, which is not the case, [McVay] waived them knowingly and voluntarily by waiving his *Miranda* rights.

For these reasons, the motion court concluded that McVay failed to demonstrate a reasonable probability that the outcome of the appeal would have been different had appellate counsel raised this particular suppression issue. This finding by the motion court is supported by the evidence and Sixth Amendment jurisprudence. Point 2 is denied.

(Doc. 13-10 at 11-12).

This Court agrees. At the time Petitioner spoke to Stewart, Petitioner was represented by counsel for the Missouri robbery, but was not represented by counsel, nor had he been charged for the separate offense in Arkansas. The Sixth Amendment right to counsel "is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings—whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'"

*McNeil v. Wisconsin*, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207, 115 L. Ed. 2d 158 (1991) (modified). The Eighth Circuit has applied *McNeil* in comparable circumstances as follows:

> it was not a violation of Scarberry's Sixth Amendment rights for the Des Moines police officers to question Scarberry about the Polk County methamphetamine lab, even though the right to counsel had attached and had been invoked on the Warren County methamphetamine charges. *See also Texas v. Cobb,* 532 U.S. 162, 174, 121 S.Ct. 1335, 149 L.Ed.2d 321 (2001) (holding that home burglary, for which the right to counsel had been invoked, was a separate offense for Sixth Amendment purposes from the murder of two persons that occurred when defendant was discovered during the burglary).

29

*Scarberry v. Iowa*, 430 F.3d 956, 959–60 (8th Cir. 2005); *see also Johnson v. Ramey*, No. 4:16-CV-01129-SNLJ-NCC, 2019 WL 3719079, at *4 (E.D. Mo. June 19, 2019), *report and recommendation adopted*, No. 4:16C01129-SNLJ, 2019 WL 3718665 (E.D. Mo. Aug. 7, 2019) ("Petitioner's right to counsel had not yet attached when he participated, without counsel, in a live lineup on August 11, 2010. This is still the case even though Officer Treis knew that Petitioner was in custody on another matter and represented by counsel in that case.").

Although Petitioner's Sixth Amendment right to counsel had not yet attached for the Arkansas offense, even if it had, he waived those rights by agreeing to speak with Stewart after she gave him *Miranda* warnings. Petitioner acknowledged that when he spoke with Stewart, he never requested an attorney, never informed her that he had an attorney, and admitted that he never told her that he wanted to remain silent. "Importantly, an attorney cannot provide ineffective assistance by failing to pursue matters that lack merit." *Newlon v. Steele*, No. 4:11CV1017 ACL, 2014 WL 4794246, at *5 (E.D. Mo. Sept. 25, 2014) (citing *Dodge v. Robinson,* 625 F.3d 1014, 1019 (8th Cir.2010)).

The Missouri Court of Appeals' rejection of this claim was not contrary to, or an unreasonable application of *Strickland v. Washington*, nor was it based on an unreasonable determination of the facts. Ground Six is denied.

### III. CONCLUSION

For the reasons stated above, the Court finds that Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Khaimov v. Crist*,

297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted).  Thus, the Court will not issue a certificate of appealability.  28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and this case is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability will not be issued.  28 U.S.C. § 2253.

A separate Judgment shall be entered in accordance with this Memorandum and Order.

Dated this 27th day of March, 2026.


  /s/ Noelle C. Collins  
NOELLE C. COLLINS  
UNITED STATES MAGISTRATE JUDGE

31